UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

JEDSON E. LEIST,

   Petitioner,

v.

WARDEN CARTER,

   Respondent.

Civil Action No.: BAH-23-479

MEMORANDUM OPINION

Petitioner Jedson E. Leist ("Petitioner") filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. ECF 1. Respondent Warden Carter ("Respondent") of the Federal Correctional Institution, Cumberland, ("FCI-C") filed a motion to dismiss, or in the alternative, for summary judgment. ECF 3. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rules 1(b), 8(a), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, Defendant's motion is **DENIED**.

BACKGROUND

In June 2022, while Petitioner was confined at the Federal Correctional Institution, Petersburg Low (FCI-PL), Correctional Officer S. Hamilton charged Petitioner with a disciplinary rule violation for threatening bodily harm to a staff member and being insolent to a staff member. ECF 1-1, at 3; ECF 3-3, at 7. Officer Hamilton prepared an incident report, which was delivered to Petitioner. ECF 3-3, at 7. In the report, Officer Hamilton described Petitioner becoming verbally aggressive after Officer Hamilton informed him that FCI-PL was being placed on a modified lockdown and, as such, access to showers, phones, and computers would be restricted for the rest of the day. ECF 3-3, at 7. According to the report, Petitioner swore at Officer Hamilton

and stated that he "would put a bullet in [Hamilton's] head." *Id.* After receiving a copy of the incident report, Petitioner disputed the facts of the report with the Unit Discipline Committee (UDC). *Id.* at 8. Among other disputes, Petitioner claimed that the report omitted that Officer Hamilton had "assaulted [him] three times during this incident" in direct retaliation for Petitioner's testimony against Officer Hamilton in an investigation under the Prison Rape Elimination Act ("PREA"). *Id.* The matter was referred to a Disciplinary Hearing Officer ("DHO") for a hearing due to the severity of the charge. *Id.* During UDC's investigation of the incident, Petitioner claimed that he had previously reported Officer Hamilton for assorted instances of misconduct, but his complaints were not investigated. *Id.* at 9.

A disciplinary hearing was scheduled before a DHO. *Id.* at 12. Petitioner was informed that he had "the right to call witnesses at the hearing" and requested that "Dr. Heck" serve as a witness to testify that Officer Hamilton was retaliating against Petitioner. *Id.* Petitioner claims that he had previously served as a witness against Officer Hamilton on a PREA case at the request of Dr. Heck, a psychologist. ECF 1, at 9. When Petitioner was informed that Dr. Heck was unavailable, he "agreed to waive her as a witness." *Id.*; ECF 3-3, at 12. Petitioner claims that he requested to call other incarcerated individuals as witnesses and asked to postpone his hearing until he could identify the full names of those individuals, but that these requests were denied.[1] ECF 1-1, at 3. Petitioner also alleges that "[t]he DHO refused to allow any of [his requested] documentation to be submitted," which included the emails and complaints Petitioner had filed regarding Officer Hamilton. ECF 1-1, at 3.

---

[1] Petitioner explains that because he was in the Special Housing Unit ("SHU") at the time of his hearing and did not have access to his property, his ability to identify witnesses and gather documents was "greatly diminished." ECF 5, at 1.

2

The disciplinary hearing took place on June 30, 2022, before DHO Elliott.[2] ECF 3-3, at 16. Petitioner alleges that DHO Elliott told him that he would be found guilty before the hearing even began, and when Petitioner asked for clarification, DHO Elliott advised him that he should "make a statement of guilt to avoid severe sanctions." ECF 1-1, at 3. When Petitioner refused to make such a statement, he claims DHO Elliott "informed [him] she would make [his] statement" for him, writing that he "was insolent and felt retaliated against." *Id*. Petitioner claims he never made that statement and maintains his innocence. *Id*.

DHO Elliott ultimately concluded that Petitioner had committed the offenses described in the incident report. ECF 3-3 at 17. The DHO report noted that the "specific evidence relied on to support [the] findings" was Officer Hamilton's incident report. *Id.* at 17–18. In an amended report signed by DHO Elliott on July 14, 2022, DHO Elliott explained that she considered Petitioner's "denial of the charge and [] version of the incident, but was not swayed or convinced of [his] innocence." *Id.* at 22. DHO Elliott pointed to Petitioner's failure to produce evidence to support his claim of retaliation or his version of events and stated that "there is no obvious reason not to believe the account of the officer." *Id.* DHO Elliott imposed sanctions on Petitioner including limitations on phone use and visitation as well as the revocation of 27 days of good conduct time ("GCT"). *Id.*

According to Petitioner, he had not received a copy of the DHO report as of the filing of this petition. ECF 1, at 8. Nevertheless, he appealed the DHO decision. ECF 1-1, at 3. The regional administrator denied Petitioner's appeal as untimely on December 5, 2022, but Petitioner

---

[2] According to Petitioner, there were originally two DHO staff present at the hearing: DHO Callis, an experienced DHO, and DHO Elliott, a trainee. ECF 5, at 1. Petitioner claims DHO Callis left shortly after the hearing began and that DHO Elliott was left alone to conduct the hearing. ECF 5, at 1.

claimed he could not have complied with the filing deadline because he did not have a copy of the DHO report. *Id.* at 1–3. Petitioner appealed the regional administrator's denial to the central administrative office, attaching an explanation that his appeal had been delayed because he had not received a copy of the DHO report. *Id.* at 5–6. Petitioner's appeal was again denied, as the central office "concur[red] with [the] rationale of [the] regional office and/or institution." *Id.*

## STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings. Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts.*; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* (§ 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254). Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted." In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief"). "The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S.

at 555). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted).

Finally, when presented with a motion to dismiss or, in the alternative, a motion for summary judgement, the disposition of the motion "implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure." *Pevia v. Hogan*, 443 F. Supp. 3d 612, 625 (D. Md. 2020). "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. Pro. 12(d).

In this case, Respondent's motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. ECF 3. The Court exercises its discretion to consider Respondent's motion as a motion to dismiss under Rule 12(b)(6). *Pevia*, 443 F. Supp. 3d at 625. In addition to Petitioner's petition and the documents attached thereto, the Court also considers the incident report, ECF 3-3, at 7–10, and DHO documents, ECF 3-3, at 12–23, attached

to Respondent's motion whose authenticity is unquestioned. As the incident report and DHO documents are part of the due process to which Petitioner is entitled, they are integral to his claim.

## DISCUSSION

A § 2241 petition may be filed to contest the manner in which a sentence is executed. *In re Vial*, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997) (*en banc*) ("[A]ttacks on the execution of a sentence are properly raised in a § 2241 petition."); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996) ("A petition under 28 U.S.C. § 2241 attacks the execution of a sentence rather than its validity. . . ."). To be entitled to the issuance of a writ of habeas corpus, a prisoner must show that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2241(c); *Estelle v. McGuire*, 503 U.S. 62, 67–68 (1991).

Prisoners retain rights under the Due Process Clause, but prison disciplinary proceedings are not part of a criminal prosecution, and thus are not entitled to the full array of rights due a defendant in a criminal proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972)). In prison disciplinary proceedings where a prisoner faces the possible loss of diminution credits, he is entitled to (1) advance written notice of the charges against him; (2) a written statement of the evidence relied on and the reasons for taking any disciplinary action; (3) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision; (4) the opportunity to have non-attorney representation when the inmate is illiterate or the disciplinary hearing involves complex issues; and (5) an impartial decision-maker. *See Wolff*, 418 U.S. at 564–71. Moreover, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

6

Here, Petitioner claims he was denied due process of law as required under *Wolff* in connection with the disciplinary proceedings. ECF 1, at 8. Petitioner claims that the DHO's refusal to grant his request for a stay to allow him to identify additional witnesses and the DHO's refusal to allow him to submit his proposed documentary evidence amounted to an improper denial of his right to present evidence on his own behalf. ECF 1-1, at 3; ECF 5, at 1–2. Petitioner next alleges that the DHO was not an impartial decisionmaker. ECF 1-1, at 3; ECF 5, at 1. Finally, Petitioner claims that the alleged delay in his receipt of the DHO report violated BOP policy,[3] citing Program Statement ("PS") 5270-09 in support, which states that a DHO report is "ordinarily" provided to the incarcerated individual within 15 working days of the decision. ECF 1-1, at 3.

As relief, Petitioner seeks to have the DHO's decision vacated and expunged from his record. ECF 1, at 1. He also asks for his 27 days of good conduct time to be restored, for his Prisoner Assessment Targeting Estimated Risk and Needs ("PATTERN") score to be adjusted, for his security custody points to be readjusted, and for a transfer back to low security institution within 500 miles of his home. *Id.* Respondent Warden Carter contends that the petition should be dismissed because Petitioner received due process in connection with his disciplinary hearing and he is not entitled to the relief he seeks.[4] ECF 3-1, at 6–12. For the reasons that follow, the Court

---

[3] Though Respondent argues that Petitioner did receive a copy of both the initial DHO report and the amended DHO report, ECF 3-1, at 7–8, the Court accepts all well-pleaded facts in the petition as true. *Washington*, 58 F.4th at 177.

[4] Respondent also argues that even if the incident report were expunged, Petitioner would still be classified as medium security because his current PATTERN score, influenced largely by Petitioner's criminal history, is 42, placing him at the high end of the medium risk level, and if the incident report were removed, Petitioner's score would be reduced just one point to 41, still placing him well into the medium risk level, which spans from 31 to 43 points. ECF 3-1, at 12; ECF 3-4, at 1–2. Because a motion to dismiss deals only with the sufficiency of the petition, which clearly

7

finds that Petitioner has successfully stated a claim that his due process rights were violated under *Wolff*.

### A. Witnesses

Petitioner claims that he asked to have several incarcerated individuals testify as witnesses at his hearing, but that he did not know their names; he also asked for a "recess" so that he could enlist the assistance of FCI-PL staff to determine the names of those individuals. ECF 1-1, at 3. He claims that both of these requests were denied, though no mention of either is made on the DHO report. *Id.*; ECF 3-3, at 12. The DHO hearing documents reflect that Petitioner requested only one witness, psychologist Dr. Heck. ECF 3-3, at 12. Petitioner later voluntarily waived his request for Dr. Heck's testimony. *Id.* As all inferences must be made in favor of the Petitioner, the Court infers that Petitioner's earlier request for peer witnesses was simply not captured on the documentation.

While a blanket denial of the opportunity to call any witness has been found to be a violation of an individual's rights, such is not the case here. *See Dalton v. Hutto*, 713 F.2d 75, 78 (4th Cir. 1983) (holding regulation that implemented a blanket prohibition on prisoners calling any witnesses who would not voluntarily appear violated due process). Here, Petitioner was undeniably provided an opportunity to call witnesses. ECF 3-3, at 12. In fact, he did request a staff witness, Dr. Heck, and then voluntarily waived the request for her testimony. *Id.* That Petitioner did not know the names of his desired peer witnesses when granted an opportunity to call them does not equate to his being denied an opportunity to call any witnesses at all. "Prison officials are not required to exhaust all possible avenues of locating the witness suggested by [an]

---

pleads that the DHO sanctions impacted Petitioner's earned good time credit, *see* ECF 1, at 8, the Court need not consider this argument.

inmate." *Shuck v. Bledsoe*, No. 7:05-CV-00167, 2005 WL 1862666, at *3 (W.D. Va. Aug. 3, 2005), *report and recommendation adopted*, 2005 WL 2675090 (W.D. Va. Oct. 20, 2005). Due process does not guarantee a prisoner the right to have prison officials comb the institution for unidentified witnesses. *See Soto v. Runnels*, No. C 02-0109 MMC (PR), 2002 WL 31236204, at *2 (N.D. Cal. Oct. 2, 2002) ("Neither *Wolff* nor any other decision of which this Court is aware, however, holds that due process also requires that prison officials locate those [unidentified] witnesses.").

The mere opportunity to call witnesses, however, is not enough to meet a prison's burden of due process with respect to a prisoner's right to witness testimony; any denial of a request to call witnesses must also be explained. *Ponte v. Real*, 471 U.S. 491, 497 (1985). This explanation may come at the time of the denial or later, in front of a court, but it must be provided at some point. *Id.* Here, no such explanation is provided. Neither the DHO report nor Respondent's motion makes any mention of Petitioner's request to call other incarcerated individuals as witnesses or offers any form of explanation for such denial. *See* ECF 3-1 (making no mention of Petitioner's request for peer witnesses); ECF 3-3, at 12–33 (same). As such, though the denial may well have been permissible with appropriate reasoning on behalf of prison officials, the absence of any explanation for why Petitioner's request was denied indicates that Petitioner has indeed successfully pled a claim that his due process rights were violated.

### B. Documentary Evidence

Due process requires that a prisoner facing a disciplinary hearing that could result in the revocation of good time credit have the opportunity to present documentary evidence unless doing so would result in an "undue hazard." *Tyler v. Hooks*, 945 F.3d 159, 168 (4th Cir. 2019) (citing *Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016), and *Wolff*, 418 U.S. at 557–58, 563–65).

"[P]rison officials bear the 'burden to come forward with evidence of the reasons for denying an inmate's request for access to documentary evidence," and "if prison officials fail to identify a specific safety or correctional concern, courts may not 'speculate' as to the officials' potential reasons for denying an inmate access to evidence in order to uphold a disciplinary decision." *Lennear v. Wilson*, 937 F.3d 257, 270 (4th Cir. 2019) (quoting *Smith v. Mass. Dep't of Corr.*, 936 F.2d 1390, 1400 (1st Cir. 1991)).

Petitioner claims his request to present documentary evidence to prove that he had lodged numerous complaints against Hamilton via administrative remedies and emails, in support of his claim of retaliation, was improperly denied. ECF 1, at 8; ECF 1-1, at 3. Defendant does not address this claim in its motion to dismiss other than to state in a conclusory fashion that "Petitioner was offered the opportunity to call witnesses, present documentary evidence at the DHO hearing, and request a staff member to be present." ECF 3-1, at 7. Though the DHO noted Petitioner's *testimony* that he had believed Hamilton's conduct was retaliatory, there is no suggestion that the DHO considered Petitioner's request to present documentary evidence to support his claim, let alone any reason as to why that request was denied. ECF 3-1, at 3–4; ECF 3-3, at 22. Thus, Petitioner has successfully pleaded a claim that he was denied due process when the DHO allegedly denied him the opportunity to present his documentary evidence.

"[P]rocedural errors in disciplinary proceedings are subject to harmless error review." *Lennear*, 937 F.3d at 276 (4th Cir. 2019) (citing *Brown v. Braxton*, 373 F.3d 501, 508 (4th Cir. 2004)). Respondent argues that any due process violations here were harmless because "some evidence" supported the DHO's findings. ECF 3-1, at 9–10 (*citing Hill*, 472 U.S. at 455). However, as the Fourth Circuit has explained, the "some evidence" standard applies only in evaluating the sufficiency of the evidence relied upon in a decision revoking good time credit; that

standard is "'irrelevant' in determining whether a denial of procedural due process is harmless." *Lennear*, 937 F.3d at 277 (quoting *Dean-Mitchell v. Reese*, 837 F.3d 1107, 1113 (11th Cir. 2016)).

"Rather than applying *Hill*'s 'some evidence' standard, courts tasked with determining whether prison officials' failure to disclose or consider testimonial or documentary was harmless have considered whether the excluded evidence could have 'aided' the inmate's defense." *Lennear*, 937 F.3d at 277 (quoting *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006)). Evidence that "contradict[s] a correctional officer's version of events" or "call[s] into question that officer's credibility" aids the prisoner. *Id.* at 278.

Here, Petitioner's proposed documentary evidence consisted of complaints he filed against Officer Hamilton. ECF 1-1, at 8–17. Though this evidence may not have elucidated the events that happened on the day of the incident in question, it is undeniably relevant to Petitioner's claim that Officer Hamilton was retaliating against him, and it may have "call[ed] into question" Officer Hamilton's credibility with respect to Officer Hamilton's dealings with Petitioner. *Lennear*, 937 F.3d at 278. As such, this evidence could have aided Petitioner, and a failure to provide Petitioner with his due process right to present it was not harmless. Thus, Petitioner has sufficiently pled a claim that his due process rights were violated when the DHO failed to permit him to present his documentary evidence.

### C. Impartial Decision maker

"Administrative decisionmakers, like judicial ones, are entitled to a 'presumption of honesty and integrity.'" *Morris v. City of Danville, Va.*, 744 F.2d 1041, 1044-45 (4th Cir. 1984) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). This presumption, however, "can be overcome with 'clear evidence to the contrary.'" *Higgason v. Lemmon*, 6 F. App'x 433, 435 (7th Cir. 2001) (quoting *United States v. Armstrong*, 517 U.S. 456, 464 (1996)).

Here, while Petitioner makes no argument that DHO Elliott had any personal stake or involvement in the incident at issue in his DHO hearing, he clearly alleges that DHO Elliott had already decided the outcome of the hearing before it even began. ECF 1-1, at 3 ("Before the hearing began the DHO informed me that I would be found guilty"). At the motion to dismiss stage, these factual allegations are sufficient to plead a violation of Petitioner's due process rights with respect to his right to an impartial decisionmaker.

### D. Written Statement

Finally, the Court turns to Petitioner's contention that he was not delivered a copy of the DHO report and the evidence relied upon by the DHO as required under *Wolff*. Petitioner asserts that he was entitled to receive a copy of the DHO report within "15 work days of the decision" because of a BOP policy that states that such is the "ordinary" practice. ECF 1-1, at 3. This is inaccurate. While the policy expresses that such reports are "ordinarily" provided within fifteen days, "the policy does not *mandate* that the inmate receive the report within fifteen (15) days or within any specified time." *Coleman v. Entzel*, No. 5:19-CV-35, 2019 WL 5399514, at *3 (N.D.W. Va. Oct. 22, 2019) (emphasis added). So long as the prisoner receives the report, any delay between the hearing and that eventual receipt of the report is a violation of the prisoner's due process rights only to the extent that it is prejudicial. *See Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183 (4th Cir. 1999) ("It is not the mere fact of the government's delay that violates due process, but rather the prejudice resulting from such delay."). Here, Petitioner has not shown that he was prejudiced by the alleged delay in his receipt of the DHO report. Though his initial appeal of the decision was denied as untimely, he was given the opportunity to explain that untimeliness, which he did. His appeal was again denied because the Central Office of Administrative Remedies "concur[red] with [the] rationale of [the] regional office and/or institution." ECF 1-1, at 1–6.

Therefore, Petitioner was not prejudiced by the alleged delay in his receipt of the DHO report. Though Petitioner has not pled facts that suggest he was denied a copy of the DHO report as required by *Wolff*, his claim nonetheless survives because he successfully pled the above violations.

Because Petitioner has successfully pled a claim for violation of his due process rights with respect to the calling of witnesses, the presentation of documentary evidence, and his access to an impartial decision maker, his petition survives Respondent's motion to dismiss.

## CONCLUSION

For the reasons explained above, Respondent's motion to dismiss, or in the alternative, for summary judgment, ECF 3, is **DENIED**.

<u>January 5, 2024</u>                                                        <u>            /s/            </u>
Date                                                                                      Brendan A. Hurson
                                                                                              United States District Judge