**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JEDSON E. LEIST,

    Petitioner,

    v.

WARDEN CARTER,

    Respondent.

Civil Action No.:  BAH-23-479

**MEMORANDUM OPINION**

Pending before the Court and ripe for dispositive review are Petitioner's motion for status update and request for an expedited ruling ("Petitioner's motion"), ECF 7, and Respondent's motion to dismiss the petition for writ of habeas corpus as moot ("Respondent's motion"),  ECF 13.  Upon review of the submitted materials, the Court finds that a hearing is unnecessary.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2023); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons set forth below, Petitioner's motion is **DENIED** as moot and Respondent's motion is **DENIED**.

I.      **BACKGROUND**

    A.      **Procedural History**

In a memorandum opinion issued on January 5, 2024, this Court denied Respondent's first motion to dismiss, finding that Petitioner Jedson E. Leist had stated a due process claim in connection with a disciplinary proceeding that occurred while Leist was confined at Federal Correctional Institution, Petersburg Low ("FCI-PL").  ECF 8.  At the time Leist filed his petition for writ of habeas corpus he was confined at Federal Correctional Institution, Cumberland ("FCI-

Cumberland") in Cumberland, Maryland.  The facts of Leist's claims were summarized by this

Court as follows:

> In June 2022, while Petitioner was confined at the Federal Correctional Institution, Petersburg Low (FCI-PL), Correctional Officer S. Hamilton charged Petitioner with a disciplinary rule violation for threatening bodily harm to a staff member and being insolent to a staff member.  ECF 1-1, at 3; ECF 3-3, at 7. Officer Hamilton prepared an incident report, which was delivered to Petitioner. ECF 3-3, at 7.  In the report, Officer Hamilton described Petitioner becoming verbally aggressive after Officer Hamilton informed him that FCI-PL was being placed on a modified lockdown and, as such, access to showers, phones, and computers would be restricted for the rest of the day.  ECF 3-3, at 7.  According to the report, Petitioner swore at Officer Hamilton and stated that he "would put a bullet in [Hamilton's] head."  *Id.*  After receiving a copy of the incident report, Petitioner disputed the facts of the report with the Unit Discipline Committee (UDC).  *Id.* at 8.  Among other disputes, Petitioner claimed that the report omitted that Officer Hamilton had "assaulted [him] three times during this incident" in direct retaliation for Petitioner's testimony against Officer Hamilton in an investigation under the Prison Rape Elimination Act ("PREA").  *Id.*  The matter was referred to a Disciplinary Hearing Officer ("DHO") for a hearing due to the severity of the charge.  *Id.*  During UDC's investigation of the incident, Petitioner claimed that he had previously reported Officer Hamilton for assorted instances of misconduct, but his complaints were not investigated.  *Id.* at 9.
>
> A disciplinary hearing was scheduled before a DHO.  *Id.* at 12.  Petitioner was informed that he had "the right to call witnesses at the hearing" and requested that "Dr. Heck" serve as a witness to testify that Officer Hamilton was retaliating against Petitioner.  *Id.*  Petitioner claims that he had previously served as a witness against Officer Hamilton on a PREA case at the request of Dr. Heck, a psychologist.  ECF 1, at 9.  When Petitioner was informed that Dr. Heck was unavailable, he "agreed to waive her as a witness."  *Id.*; ECF 3-3, at 12. Petitioner claims that he requested to call other incarcerated individuals as witnesses and asked to postpone his hearing until he could identify the full names of those individuals, but that these requests were denied.  ECF 1-1, at 3. Petitioner also alleges that "[t]he DHO refused to allow any of [his requested] documentation to be submitted," which included the emails and complaints Petitioner had filed regarding Officer Hamilton.  ECF 1-1, at 3.
>
> The disciplinary hearing took place on June 30, 2022, before DHO Elliott.  ECF 3-3, at 16.  Petitioner alleges that DHO Elliott told him that he would be found guilty before the hearing even began, and when Petitioner asked for clarification, DHO Elliott advised him that he should "make a statement of guilt to avoid severe sanctions."  ECF 1-1, at 3.  When Petitioner refused to make such a statement, he claims DHO Elliott "informed [him] she would make [his]

statement" for him, writing that he "was insolent and felt retaliated against." *Id*. Petitioner claims he never made that statement and maintains his innocence. *Id*.

DHO Elliott ultimately concluded that Petitioner had committed the offenses described in the incident report. ECF 3-3 at 17. The DHO report noted that the "specific evidence relied on to support [the] findings" was Officer Hamilton's incident report. *Id*. at 17–18. In an amended report signed by DHO Elliott on July 14, 2022, DHO Elliott explained that she considered Petitioner's "denial of the charge and [] version of the incident, but was not swayed or convinced of [his] innocence." *Id*. at 22. DHO Elliott pointed to Petitioner's failure to produce evidence to support his claim of retaliation or his version of events and stated that "there is no obvious reason not to believe the account of the officer." *Id*. DHO Elliott imposed sanctions on Petitioner including limitations on phone use and visitation as well as the revocation of 27 days of good conduct time ("GCT"). *Id*.

According to Petitioner, he had not received a copy of the DHO report as of the filing of this petition. ECF 1, at 8. Nevertheless, he appealed the DHO decision. ECF 1-1, at 3. The regional administrator denied Petitioner's appeal as untimely on December 5, 2022, but Petitioner claimed he could not have complied with the filing deadline because he did not have a copy of the DHO report. *Id*. at 1– 3. Petitioner appealed the regional administrator's denial to the central administrative office, attaching an explanation that his appeal had been delayed because he had not received a copy of the DHO report. *Id*. at 5–6. Petitioner's appeal was again denied, as the central office "concur[red] with [the] rationale of [the] regional office and/or institution." *Id*.

ECF 8, at 1–3 (footnotes omitted).

This Court found, in pertinent part, that Leist had stated a due process claim because: (1) he was denied the opportunity to call witnesses without explanation, *id.* at 8–9; (2) there was no evidence that the DHO considered his request to present documentary evidence in support of his claim that he had lodged complaints against the complaining officer and no explanation why the request was denied, *id.* at 10–11; (3) the factual allegation that the DHO had decided Leist's guilt prior to the hearing could not be disregarded in a 12(b)(6) review, *id.* at 11–12; and (4) the petition sufficiently demonstrated that Leist was prejudiced by the delay in receiving the written decision of the DHO, *id.* at 12–13.

B.      **Current Motion to Dismiss**

On February 9, 2024, Respondent filed a second motion to dismiss asserting that the petition is now moot because the Bureau of Prisons ("BOP") expunged the incident report at issue and restored Leist's good conduct time ("GCT").  ECF 13, at 2 ¶ 5.  When the restored GCT is applied to his sentence, his scheduled release date from BOP custody is November 17, 2024.  *Id.*

Leist opposes the motion to dismiss, claiming that his petition is not moot because his PATTERN score has remained unchanged.  ECF 17.  He maintains that if his PATTERN score is changed, he would be entitled to have First Step Act credits applied to his sentence and he would be released from custody sooner.  *Id.*

Respondent's reply explains that Leist's PATTERN score cannot be changed because it is based in large part on his criminal history which cannot change.  ECF 19.  Respondent explains that PATTERN is the tool the BOP uses to identify thirteen areas to be assessed to determine an inmate's risk and needs.  *Id.* at 2.  Those areas for needs assessment are: anger/hostility, finance/poverty, antisocial peers, medical, cognitions, mental health, dyslexia, education, family/parenting, work, medical, recreation/leisure/fitness, substance abuse, and trauma.  *Id.* (citing U.S. Dep't of Just., Off. of the Att'y Gen., *The First Step Act of 2018: Risk and Needs Assessment*, at 23 n.18 (Jan. 2020), available online: https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf).  The areas for risk assessment are: aging, history of violence, earned GED, drug treatment, completed programs, completed work programs, infractions, serious infractions, clean infraction history, clean serious infraction history, and financial compliance.  *See* U.S. Dep't of Just., Off. of the Att'y Gen., *The First Step Act of 2018: Risk and Needs Assessment*, at 29.  Although Leist correctly notes that he has earned credits, Respondent explains that he may not have those credits applied to his sentence

unless or until he has attained a low or minimum risk level on PATTERN.  *Id.*  Male inmates whose PATTERN scores are between 31 and 43 points are medium risk level inmates; Leist's total score is 42 and his criminal history score is 40.  ECF 3-4, at 2, 5.  The points added to Leist's score for "all incident reports" and "serious incident reports" total 4 points.  *Id.* at 5.  Thus, if the points added to his score for the incident report that is the subject of Leist's petition are subtracted from his score of 42, he would still have a PATTERN score within the range for medium risk.

In a surreply, Leist asserts that "respondent's reply is inaccurate in its entirety."  ECF 21. He maintains that he provided this Court with "documentary evidence that he received from Case Manager Booher as well as a copy of an email from Booher stating that should the incident report be expunged, [Leist] would be rescored on PATTERN from a Medium risk rate to a Low risk rate." *Id.*; *see also* ECF 7-2 (October 2, 2023 email from Case Manager Booher agreeing that, absent the sanction for the incident report, Leist's PATTERN score would be Low).  He admits that he is currently "scored at a Medium risk rate" but insists he should no longer be in BOP custody and should instead be serving his term of supervised release.  *Id.*

Respondent also filed a surreply arguing that Leist's surreply contains legal and factual inaccuracies and that pursuant to 18 U.S.C. §3624(g)(1)(D)[1] this "Court does not have subject matter jurisdiction to address the BOP's determination of [Leist's] PATTERN score."  ECF 22.

---

[1] The statutory provision cited governs placement of prisoners in prerelease custody and defines which prisoners are eligible for that placement.  There is nothing in the statute divesting this Court of subject matter jurisdiction.  Further, as Respondent has only raised this issue in a surreply footnote and cites only one unpublished Northern District of West Virginia case in support, *see* ECF 22, at 1 n.1 (citing *Nevel v. Brown*, No. 5:23-CV-285, 2023 WL 8505881, at *1 (N.D. W. Va. Oct. 27, 2023), *report and recommendation adopted*, No. 5:23-CV-285, 2023 WL 7490046 (N.D. W. Va. Nov. 13, 2023)), the Court will not address this issue more extensively here.

## II.    STANDARD OF REVIEW

"The Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with statutory provisions or [the Rules Governing Section 2254 Cases], may be applied" to habeas corpus proceedings.  Rule 12, *Rules Governing § 2254 Cases in the U.S. Dist. Cts*.; *see also* Rule 1(b), *Rules Governing § 2254 Cases in the U.S. Dist. Cts.* (section 2254 Rules apply to habeas corpus petitions filed under provisions other than § 2254).  Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate where the complaint "fail[s] to state a claim upon which relief can be granted."  In deciding a motion to dismiss, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff [or petitioner]."  *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 177 (4th Cir. 2023) (citing *Singer v. Reali*, 883 F.3d 425, 437 (4th Cir. 2018)).

"To survive a motion to dismiss, a complaint [or petition] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also* Fed. R. Civ. P. 8(a)(2) (noting that a complaint must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief").  "The complaint [or petition] must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'"  *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555).  At the same time, a "complaint [or petition] will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits."  *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

### III.    DISCUSSION

There is no dispute between the parties that to the extent Leist was seeking to have the incident report expunged and his revoked GCT restored, the petition is now moot as to that request for relief.  The dispute is now whether Leist is entitled to have his PATTERN score recalculated in light of that expungement.  To be entitled to the issuance of a writ of habeas corpus, a prisoner must show that he is in custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2241(c); *Estelle v. McGuire*, 503 U.S. 62, 67–68 (1991).  While the Attorney General and, by designation, the BOP are charged with the responsibility of calculating security scores and diminution of confinement credits for federal prisoners, a prisoner may not be detained in violation of the law.  Here, there is a dispute and at least some evidence that Leist is correct in his assertion that his PATTERN score should place him in the Low risk range, in light of the expungement of the incident report.  *See* ECF 7-2.  The petition therefore does not appear to be entirely moot.[2]  Further, there is no evidence before the Court indicating that Leist's PATTERN score was recalculated after the incident report was expunged.

The motion to dismiss shall therefore be denied.  Leist's PATTERN score must be recalculated in light of the expungement and, if his score places him at Low risk, his earned credits applied to his sentence.  Respondent will be required to file a status report within **14 days** of the date of this opinion advising the Court of Leist's PATTERN score and the effect it has on his release from custody.

---

[2] Respondent appears to concede that there is at least some possibility that Leist's PATTERN score may change, making the petition not moot.  *See* ECF 19 ("As an inmate's criminal history is not subject to change during incarceration, he will *likely* remain at a Medium risk level . . . ." (emphasis added)).

A separate Order follows.


<u>July 10, 2024</u>                                        <u>                    /s/                    </u>
Date                                                   Brendan A. Hurson
                                                       United States District Judge